IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

SEBASTIAN E. NJANG, *et al.*,
    Plaintiffs                    *

vs.                                     *

                                                   Civil Action No.: AW-05-3068

MONTGOMERY COUNTY,      *
MARYLAND, *et al.*,
    Defendants.                   *

******

## MEMORANDUM OPINION

This suit arises out of the death of Peter Njang ("Njang" or "Decedent"). Plaintiffs Sebastian E. Njang and Doreen Njang ("Plaintiffs"), as the personal representative of Decedent's Estate and spouse of Decedent, filed this survival and wrongful death action on November 14, 2005 against Defendants Montgomery County, Maryland (the "County") and Officer Candice Marchone ("Marchone") (collectively, "Defendants"), alleging various violations of state and federal law. Currently pending before the Court is Defendants' Motion for Summary Judgment on all of Plaintiffs' claims (Paper No. 23). The Court has reviewed the entire record and has determined that a hearing is unnecessary. *See* Local Rule 105.6 (D. Md. 2004). For the reasons stated more fully below, the Court will GRANT Defendants' Motion for Summary Judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

The following facts are taken in the light most favorable to Plaintiffs. On August 12, 2004, Decedent—a recent arrival to the United States from Cameroon—was scheduled to meet with his sister at her ground floor apartment on the 11400 block of Lockwood Drive in the White Oak section of Silver Spring, Maryland. Decedent and his sister had plans to go to Elite Protective Service in Wheaton, Maryland in search of employment. By the time Decedent

arrived at his sister's apartment, she had already departed, so he decided to await her return. Dep. of Sebastian Njang at 16-21.

Defendant Officer Candice Marchone was on patrol duty in the White Oak section on the afternoon of August 12, 2004. The property manager of the apartment complex had recently made Marchone aware of a number of ground floor burglaries in the high crime area. While passing the 11400 block of Lockwood Drive, Marchone observed Defendant leaning against the window of one of the ground floor apartments. Marchone decided to park her patrol car and approach Decedent. Dep. of Candice Marchone at 34.

Marchone approached Decedent at the apartment window and demanded that he identify himself and explain his presence. When Decedent responded that he did not live at the apartment, Marchone initiated a pat down search of Decedent by grabbing his waist. Decedent responded by jerking his right side away from Marchone and putting his right hand behind his back, out of Marchone's line of sight. *Id.* at 35-36. Marchone immediately pulled her service weapon and demanded that Decedent show his hands. *Id.* Decedent brought his hands from behind his back, holding a box cutter. *Id.* at 42. The box cutter did not have its blade extended. Dep. of David McGill at 25.

Marchone, believing she saw a blade extended from the box cutter, immediately backed up and ordered Decedent to drop his weapon. Decedent did not comply, and instead began to approach Marchone with the box cutter still in his hand. Marchone continued to order Decedent to drop the box cutter or she would shoot and backed up to keep the distance between her and Decedent. As this cycle continued, Marchone tried to request back up on her portable radio several times and she eventually contacted someone. As Decedent continued to approach,

Marchone eventually reached a point where she could no longer back up without backing into her police cruiser. She ordered Decedent to drop his weapon once again, and upon his noncompliance, she shot Decedent in the chest. Marchone then kicked the box cutter out of the Decedent's hand and began to administer first aid. Decedent eventually died from the wound. The forensics team discovered one shell from Marchone's gun and an undrawn box cutter within the vicinity of Marchone's police vehicle.

## **STANDARD OF REVIEW**

Summary judgment is only appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). In a motion for summary judgment, the moving party discharges its burden by showing an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 325. The court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine*, 501 U.S. 496, 520 (1991) (internal citations omitted). However, the party who bears the burden of persuasion on a particular claim must present legally sufficient evidence to support each element of his claim. "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. To defeat a motion for summary judgment, the nonmoving party must come forward with affidavits or other similar evidence to show that a genuine issue of material fact exists. *See Matsushita Elec. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). While the evidence of the nonmoving party is to be believed and all justifiable inferences drawn in his or her favor, a party cannot create a genuine dispute of material fact

3

through mere speculation or compilation of inferences.  *See Deans v. CSX Transp., Inc.,* 152 F.3d 326, 330-31 (4th Cir. 1998); *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

With regard to Plaintiffs' Section 1983 claims, Defendant Marchone contends that she is entitled to qualified immunity.  The doctrine of qualified immunity seeks to strike a balance between competing social objectives, by allowing the "vigorous exercise of official authority" while at the same time recognizing a possibility of redress for victims of officials' abuses.  *See Butz v. Economou*, 438 U.S. 478, 504-06 (1978).  Therefore, as against claims under federal law, "governmental officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see Jones v. Buchanan*, 325 F.3d 520, 531 (4th Cir. 2003) (declaring that "qualified immunity operates to ensure that before [governmental actors] are subject to suit, officers are on notice that their conduct is unlawful").  Because qualified immunity is "an immunity from suit rather than a mere defense to liability," a trial judge must resolve the qualified immunity inquiry at the earliest possible stage in litigation.  *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985); *see also Turmon v. Jordan*, 405 F.3d 202, 204 (4th Cir. 2005).

## **DISCUSSION**

A.  Qualified Immunity

The question of whether a governmental official is entitled to qualified immunity involves a two-step analysis.  The Court must first determine if a constitutional right was violated, and then "whether the right was clearly established at the time such that it would be clear to an objectively reasonable officer that his conduct violated that right."  *Brown v. Gilmore*,

278 F.3d 362, 367 (4th Cir. 2002); *see also Clem v. Corbeua*, 284 F.3d 543 (4th Cir. 2002). Plaintiffs allege that Marchone used excessive force in violation of Decedent's constitutional right to be free from unreasonable seizures. The Supreme Court and the Fourth Circuit has made clear that the use of deadly force by an officer is not excessive where "the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." *Milstead v. Kibler*, 243 F.3d 157, 162 (4th Cir. 2001) (citing *Tennessee v. Garner*, 471 U.S. 1 (1985)).  Because police officers necessarily must make "split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving," a court must evaluate the facts from the perspective of a reasonable officer on the scene, and not in hindsight. *Graham v. Connor*, 490 U.S. 386, 396-97 (1989). Consistent with this view, the Fourth Circuit has reiterated that "reasonableness is determined based on the information possessed by the officer at the moment that force is employed." *Waterman v. Batton*, 393 F.3d 471, 477 (4th Cir. 2005).

Even viewing the evidence in the light most favorable to Plaintiffs, Marchone reasonably could have believed that Njang posed a significant threat to her. Not only did Njang brandish what appeared to be (and later determined to be) a box cutter, but Njang also continued to advance toward Marchone with the weapon in his hands. Despite Marchone's repeated orders to drop the weapon, Njang continued to approach Marchone. It was not until Marchone felt as if she was unable to put any more distance between her and the advancing Decedent did she decide to discharge her weapon.

Plaintiffs argue that there are material facts in dispute as to whether Marchone reasonably believed that Njang posed a serious threat. In support of this argument, Plaintiffs contend that

5

Marchone's reason for shooting Njang was because she felt that Njang disrespected her authority as a female officer. *See* Pl.'s Opp. at 9. Plaintiffs' argument misses the mark. Although there may have been other factors that played a role in Marchone's decision to shoot the Decedent, Marchone's personal motives are not determinative of the question. The Fourth Circuit has stated that in determining whether an officer has exerted excessive force, "[w]e do not inquire into an officer's motives, intentions, or tendencies, and instead determine whether a reasonable officer in the same circumstances would have concluded that a threat existed justifying the particular use of force." *Clem*, 284 F.3d at 550 (internal quotations omitted).

On the facts of this case, a reasonable officer could have concluded that Njang posed a serious threat. Marchone was patrolling an area which had reported a recent series of first floor apartment burglaries. In the middle of the afternoon, she notices a man couched at the window of a first floor apartment. When asked whether he lived at the apartment, the man responded in the negative. Marchone then attempted to conduct a pat down search, which was met with resistance.[1] Decedent then moved his right hand behind his back and out of Marchone's line of sight. At this moment, Marchone backed up, pulled her service weapon, and ordered Decedent to show his hands. When Decedent revealed his hands, he was holding a box cutter. When Decedent refused to drop the box cutter after repeatedly being ordered to do so by Marchone, it

---

[1] The allegations in Plaintiffs' Complaint seem to center around the shooting of Decedent. However, in their Opposition to Defendants' Motion for Summary Judgment, Plaintiffs suggest that Marchone's stop and pat down of Decedent was in violation of the Fourth Amendment. It appears from the record, however, that Marchone's pat down of Decedent was not violative of *Terry v. Ohio*, 392 U.S. 1 (1968). When Marchone observed Decedent couched at the first floor apartment window, she decided to investigate further. Suspecting that Decedent was either a burglar or a lookout, she decided to pat him down to make sure he did not have any weapons on his person. The Court believes that Marchone had a sufficient reasonable articulable suspicion to make this a valid *Terry* stop.

was certainly reasonable for Marchone to believe that Decedent posed a serious threat. Therefore, Marchone's use of deadly force in response to the perceived threat was not excessive. *See Sigman v. Town of Chapel Hill*, 161 F.3d 782 (4th Cir. 1998) (holding that the decedent's constitutional rights were not violated because, faced with a subject advancing toward the officer with a knife and ignoring the officer's orders to drop the weapon, a reasonable officer would perceive the subject as a dangerous threat).

Since Plaintiffs have failed to come forth with evidence showing a genuine issue of material fact on the question of whether Marchone violated a constitutional right, Defendants are entitled to judgment as a matter of law on Plaintiffs' federal constitutional claims.[2]  *See Clem*, 284 F.3d at 549 (stating that, in the two-step qualified immunity analysis, if a constitutional violation is not established, then "the analysis ends; the plaintiff cannot prevail").

B.  Plaintiffs' State Law Claims

1.      Claims under Maryland Constitution

In Count VII of the Complaint, Plaintiffs allege that Defendants violated the Decedent's rights under Articles 24 and 26 of the Maryland constitution.  Maryland courts have held that Article 26 of the Maryland constitution is to be read *in pari materia* with the Fourth Amendment of the U.S. Constitution.  *See Richardson v. McGriff*, 762 A.2d 48 (Md. 2000).  The two provisions are complimentary but independent, and decisions interpreting the Fourth

---

[2] Count V of Plaintiffs' Complaint is a *Monell* claim against the County for negligent training and supervision. There can be no *Monell* claim absent a constitutional violation.  *See generally Monell v. Dept. of Social Services*, 436 U.S. 658 (1978).  Furthermore, beyond mere allegations and lawyer argument, Plaintiffs have not presented any evidence of improper training or supervision on the part of the County.  As such, Plaintiffs cannot prevail on Count V of the Complaint and Defendants are entitled to judgment as a matter of law.

7

Amendment are only persuasive authority in interpreting Article 26. *Dua v. Comcast Cable of Md., Inc.*, 805 A.2d 1061, 1072 (Md. 2002). However, on the facts of this case, the Court's analysis of the state constitutional question is the same as that under the federal constitution. Because Marchone's conduct was objectively reasonable, there is no Article 26 violation. Similarly, because Plaintiffs have failed to put forth any evidence of improper training or supervision on the part of the County, Plaintiffs' state constitutional claim against the County also fails.[3]

2.  State Common Law Tort Claims

Plaintiffs have also brought claims against Defendants under the state common law theories of negligence and assault and battery. While not immune from suit on claims arising under the Maryland constitution, the County enjoys governmental immunity on Plaintiffs' state law tort claims against the County. Under Maryland law, local governmental entities are entitled to governmental immunity from state tort claims arising out of activities that are governmental in nature. *See Bradshaw v. Prince George's County*, 396 A.2d 255, 259 (Md. 1979) (explaining that a "municipality or county is liable for its torts if it acts in a private or proprietary capacity, while it is immune if acting in a governmental capacity"). Here, there is no dispute that the County was acting in a governmental capacity. Therefore, the County is entitled to summary judgment on Plaintiffs' state law tort claims.

---

[3] Plaintiffs also allege that Defendants violated Article 24 of the Maryland constitution. Article 24 is to be read *in pari materia* with the Fourteenth Amendment. The Supreme Court has held that excessive force cases are to be analyzed under the Fourth Amendment, not the Fourteenth Amendment. *See Graham v. Conner*, 490 U.S. 386, 395 (1989). Therefore, Plaintiffs' Article 24 claims are not cognizable given the facts of this case.

With respect to Plaintiffs' assault and battery claim against Defendant Marchone, Plaintiffs must show that Marchone acted with malice and had no legal justification for her actions. The Court of Special of Appeals of Maryland has explained that

> [e]ven though public official immunity is not applicable to intentional acts, it is important to bear in mind that a public official, such as a policeman or a fireman, in performing his or her discretionary duties within the scope of employment, in the absence of actual malice and without actual knowledge of wrongdoing, generally will not have committed actionable conduct. This is because the individual will not be guilty of an intentional tort in the first instance because the conduct is legally justified or, alternatively, depending on a court's conceptual analysis, be subject to some qualified or conditional privilege other than public official immunity.

*Thomas v. City of Annapolis*, 688 A.2d 448, 456 (Md. Ct. Spec. App. 1997). Here, the Court has determined that Marchone acted reasonably in her decision to shoot Decedent. Because Marchone's actions were legally justified, the Court will grant summary judgment in favor of Marchone on Plaintiffs' common law battery claim.

Similarly, Plaintiffs' common law claim for negligence against Marchone also fails. Not only have Plaintiffs failed to raise a genuine fact question as to whether Marchone's conduct fell below the standard of care, but Plaintiffs' negligence claims are also barred by public official immunity. Maryland law recognizes that "[q]ualified public official immunity is a defense to negligence actions." *See Williams v. Prince George's County*, 685 A.2d 884, 896 (Md. Ct. Spec. App. 1996) (citing *Ashton v. Brown*, 660 A.2d 447 (Md. 1995) and *Parker v. State*, 653 A.2d 436 (Md. 1995). Under the public official immunity doctrine, "an official of a municipal corporation while acting in a discretionary capacity, without malice, and within the scope of the official's employment or authority shall be immune as an official or individual from any civil liability for the performance of the action." *Williams*, 685 A.2d at 896. Here, Marchone was legally

9

justified in shooting Decedent. Furthermore, Plaintiffs have not shown that Marchone acted with any malice. Plaintiffs assert that because Marchone believed Njang was disrespecting her authority as a woman, Marchone acted with malice in shooting Decedent. "Malice has been defined as the performance of an act without legal justification or excuse and with an evil or rancorous motive influenced by hate, the purpose of which is to deliberately and wilfully injure another." *Id.* Marchone's statement, recorded in some notes by an interviewer after the fatal shooting, does not show that Marchone possessed the sort of evil and ill-will necessary to sustain a finding of malice. Plaintiffs cannot defeat summary judgment through mere speculation or compilation of inferences. *See Deans v. CSX Transp., Inc.,* 152 F.3d 326, 330-31 (4th Cir. 1998). As such, Defendant Marchone is entitled to summary judgment on Plaintiffs' negligence claims against her.

## CONCLUSION

For the reasons stated above, the Court will GRANT Defendants' Motion for Summary Judgment on all of Plaintiffs' claims (Paper No. 23). A separate Order consistent with this Memorandum Opinion will follow.

| | |
|---|---|
| July 18, 2007 | /s/ |
| Date | Alexander Williams, Jr. |
| | United States District Judge |